JS - 6

**FILED: 8/01/13**

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| *Nancy Olson, et al.* | ) | |
| Plaintiffs, | ) | **CASE NO. CV 13-2906-GHK (AGRx)** |
| v. | ) | **MEMORANDUM AND ORDER RE:** |
| *Wells Fargo Bank, N.A., et al.* | ) | **PLAINTIFFS' MOTION TO** |
| Defendants. | ) | **REMAND** |
| _____ | ) | |

On March 18, 2013, Plaintiffs Nancy and David Olson ("Plaintiffs") filed this action in Los Angeles County Superior Court. The Complaint alleges only state law claims. On April 24, 2013, Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Bank of America, N.A. ("Bank of America," and collectively with Wells Fargo, "Bank Defendants") removed this action to this court.[1]   The Notice of Removal ("NOR") asserts

_____

[1] Defendant NDEX West, LLC ("NDEX" and collectively with Bank Defendants, "Defendants") did not join the Notice of Removal ("NOR"), which claimed that NDEX should be disregarded for diversity purposes because it was fraudulently joined. *See AGI Pub., Inc. v. HR Staffing, Inc.*, 2012 WL 3260519, *2 (E.D. Cal. 2012) ("Nominal, unknown, or fraudulently joined defendants are exempt from the general rule, and do not need to consent to a removal." (citation omitted)). NDEX has since joined Bank Defendants' opposition to the Motion to Remand and has filed a Joint Stipulation regarding its non-monetary status. [Dkt.

1   that we have subject matter jurisdiction based on diversity of citizenship.  (NOR at 2

2   [Dkt. No. 1]).[2]

3          This matter is now before us on Plaintiffs' Motion to Remand ("Motion").  We

4   have considered the papers filed in support of and in opposition to the Motion and the

5   Parties' arguments at the June 24, 2013 hearing.  As the Parties are familiar with the

6   facts, we will repeat them only as necessary.  Accordingly, we rule as follows.

7   **I.      Background**

8          Plaintiffs are citizens of California, their state of domicile.  (NOR at 2-3).

9   Defendant Wells Fargo is a citizen of South Dakota, where its main office is located.

10  *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) (holding that "a national bank, for

11  § 1348 purposes, is a citizen of the State in which its main office, as set forth in its

12  articles of association, is located").  Wells Fargo's principal place of business is in San

13  Francisco, California.[3]  Whether that means Wells Fargo is also a citizen of California

14  _____

15  Nos. 19 & 21].  We entered an order on NDEX's non-monetary status on May 30,

16  2013.

17         [2] One of Plaintiffs' state law claims is for alleged violation of the Rosenthal
    Fair Debt Collection Practices Act ("RFDCPA"), which refers to the federal Fair

18  Debt Collection Practices Act.  However, this reference is insufficient to vest us
    with federal question jurisdiction because "such references are inevitable as the

19  California legislature incorporated portions of the FDCPA into its law."  *Ortega v.*

20  *HomEq Servicing*, 2010 WL 383368, *5 (C.D. Cal. 2010) (Morrow, J.)  "Since the
    provisions are incorporated in and made part of state law, referencing the federal

21  statute does not automatically transform [the] RFDCPA claim into a federal claim."

22  *Id.* (citing *Britz v. Cowan*, 192 F.3d 1101, 1103 (7th Cir. 1999) (Posner, J.)
    (explaining that "a state cannot expand federal jurisdiction by deciding to copy a

23  federal law")).  Perhaps recognizing this authority, Defendants do not assert federal

24  question jurisdiction on this removal.

25         [3] Plaintiffs assert in their moving papers that Wells Fargo's principal place of
    business is in California.  (Mot. at 5).  Wells Fargo does not argue otherwise in its

26  opposition.  It is therefore deemed to have conceded that its principal place of
    business is in California.  *See* L.R. 7-12; *Richter v. Mutual of Omaha Ins. Co.*,

27  2007 WL 6723708, *5 (C.D. Cal. 2007).  Further, Wells Fargo has admitted in

28

1   (which would defeat complete diversity) is the subject of the dispute on this Motion.

2   Bank of America is a citizen of North Carolina, where its main office is located.  (NOR at

3   8-9).[4]  NDEX is a citizen of Delaware, Texas, Michigan, and Minnesota.  (NOR at 9-11).

4   **II.   Legal Standard**

5        In general, a defendant may remove a case over which the federal courts have

6   original jurisdiction.  28 U.S.C. § 1441(a).  Here, the purported basis for original

7   jurisdiction is diversity of citizenship.  28 U.S.C. § 1332(a).  Diversity jurisdiction

8   generally requires "complete diversity," i.e., "each defendant must be a citizen of a

9   different state from each plaintiff."  *In re Digimarc Corp. Derivative Litigation*, 549 F.3d

10  1223, 1234 (9th Cir. 2008).  The removing party bears the burden of establishing federal

11  subject matter jurisdiction.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

12  Further, "[w]e strictly construe the removal statute against removal jurisdiction. . . .

13  Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the

14  first instance."  *Id.* (citations omitted).

15  //

16  //

17  //

18  **III.  Discussion**

19

20  _____

21  other actions that California is its principal place of business.  *Miles v. Wells Fargo
    Mortgage Co.*, No. 06-cv-1991-EMC (N.D. Cal. July 31, 2006) (Answer ¶ 5

22  (admitting that "Wells Fargo Bank, N.A. has its principal place of business in San
    Francisco, with its main office in Sioux Falls, South Dakota")).

23       [4] The NOR does not state the principal place of business of Bank of

24  America, N.A., the national bank (which we refer to as "Bank of America," above).
    Instead, the NOR states that non-party "Bank of America Corporation" is

25  organized under the laws of Delaware and has its principal place of business in

26  North Carolina.  (NOR at 8-9).  Because we conclude that Wells Fargo's
    citizenship defeats complete diversity, Bank of America's principal place of

27  business is immaterial.

28

3

1    The question before us is whether Wells Fargo is a citizen of California.  Under   §

2    1348, "[a]ll national banking associations shall . . . be deemed citizens of the States in

3    which they are respectively located."  28 U.S.C. § 1348.  The issue is whether Wells

4    Fargo is "located" in California, the state of its principal place of business.

5    Plaintiffs argue that Ninth Circuit authority, *American Surety Co. v. Bank of*

6    *California*, 133 F.2d 160 (9th Cir. 1943), requires us to hold that Wells Fargo is a citizen

7    of the state in which its principal place of business is located.  In any event, they assert

8    that we should interpret the term "located" to include a national bank's principal place of

9    business because Congress intended that term to give national banks the same access to

10   the federal courts as state banks and corporations, which today have principal place of

11   business citizenship.  28 U.S.C. § 1332(c)(1).  Defendants respond that *American Surety*

12   is not binding because it is clearly irreconcilable with Supreme Court authority, and that

13   Congress meant the term "located" to give national banks the same access to the federal

14   courts as state banks and corporations had in 1948, when Congress last amended § 1348.

15   At that time, state banks and corporations were citizens only of their states of

16   incorporation.  Hence, under § 1348, Wells Fargo is a citizen of only a single state, where

17   its main office is located.  We address these arguments in turn below.

18   **A.    American Surety Co. v. Bank of California**

19   *American Surety* interpreted the 1911 statute, which contained material language

20   identical to § 1348: national banks shall "be deemed citizens of the States in which they

21   are respectively located."  *American Surety,* 133 F.2d at 161-62.  Unlike here, the issue in

22   that case was whether "located" means that a national bank is a citizen of each state in

23   which the bank has a branch office.  *Id.*  The court held that defendant, a national bank,

24   was a "citizen *only* of the state in which its principal place of business [was] located."  *Id.*

25   at 162 (emphasis added).  The court explained that "[t]here would appear to be a close

26   analogy between such a bank and a corporation national in scope.  The citizenship of a

27   corporation is fixed by its principal place of business."  *Id.*  Hence, national banks should

28

1   be treated the same way.   Further, "[i]f the Congress had intended to provide that a

2   national banking institution should be given the privilege and should carry the duties of

3   citizenship in various states upon the basis of branch business offices being established

4   therein, it would be a noteworthy departure from the general rule, and more likely than

5   not Congress would have plainly state[d] such intent." *Id.*

6         Plaintiffs urge a literal reading of the court's use of "principal place of business" to

7   support their argument that our issue is foreclosed by this purportedly binding authority.

8   We disagree. *American Surety* cannot be read without regard to its context or the

9   authorities cited therein.   Given the issue that the court confronted, as well as the

10  authorities it cited in support of its holding, we conclude that the court used "principal

11  place of business" interchangeably with "state of incorporation." *See Rouse v. Wachovia*

12  *Mortg., FSB*, 2012 WL 174206, *8 (C.D. Cal. 2012) (explaining that *American Surety*'s

13  "linkage between a corporation's citizenship and its principal place of business, rather

14  than an erroneous exposition of the law, reflected [the court's] failure to consider the case

15  where a corporation's principal place of business was not in its state of incorporation").

16  This is borne out by the authorities the court cited for its holding, none of which referred

17  to "principal place of business" as the test for corporate citizenship. *See St. Louis & S.F.*

18  *Ry. Co. v. James*, 161 U.S. 545, 562 (1896) (explaining that "[t]here is an indisputable

19  legal presumption that a state corporation, when sued or suing in a circuit court of the

20  United States, is composed of citizens of the state which created it"); *Southern Ry. Co. v.*

21  *Allison*, 190 U.S. 326, 338 (1903) (explaining that "it will be conclusively presumed, as a

22  matter of law, that [corporations] are citizens of the state originally chartering it").   In the

23  context of the dispute that it was resolving, *American Surety* likely conflated the concepts

24  of state of incorporation and principal place of business.   Under this reading, *American*

25  *Surety* held that national banks are not citizens of every state where a branch office is

26  located because they should have citizenship analogous to a corporation's state of

27  incorporation.

28

1    On the other hand, were we to adopt Plaintiffs' literal reading of the court's use of

2  the phrase "principal place of business" as having the meaning now embodied in 28

3  U.S.C. § 1332(c)(1), *American Surety* would still not control our decision because it

4  would be clearly irreconcilable with *Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006).  In

5  general, "where intervening Supreme Court authority is clearly irreconcilable with . . .

6  circuit authority . . .  district courts should consider themselves bound by the intervening

7  higher authority and reject the prior opinions of [the circuit court] as having been

8  effectively overruled."  *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

9    While addressing the question of whether a national bank is located in the state of

10  its main office or in every state in which it maintains a branch office, *Schmidt* held that "a

11  national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set

12  forth in its articles of association, is located."  *Schmidt*, 546 U.S. at 306.  But the court

13  had no occasion to decide whether a national bank is only located in the state of its main

14  office, especially since Wachovia Bank has its main office and its principal place of

15  business in the same state.  *Id.* at 317 n.9.  Thus,  *American Surety* cannot be read to hold

16  literally that a national bank is a citizen *only* of the state of its principal place of business

17  without being in irreconcilable conflict with Supreme Court authority.

18    In any event, *American Surety* does not answer our question.  Either it goes no

19  farther than *Schmidt*, or *Schmidt* abrogates it.  While we know that a national bank is a

20  citizen of at least the state where it has its main office, we must still decide whether a

21  national bank is also a citizen of the state of its principal place of business.

22    In that regard, *American Surety* is helpful because it is still good law for the

23  general principle that in analyzing where a national bank is "located," we draw a "close

24  analogy" between national banks on the one hand, and state banks and corporations, on

25  the other, because all of these entities should have the same access to the federal courts.

26  *Martinez v. Wells Fargo Bank*, __ F.Supp.2d ___, 2013 WL 2237879, *7 (N.D. Cal.

27  2013) (explaining that "the thrust of [*American Surety*'s] analysis was predicated on

28

1   jurisdictional parity between national banks and corporations"); *see Miller v. Gammie*,

2   335 F.3d 889, 900 (9th Cir. 2003) (explaining that lower courts are "bound not only by

3   the holdings of higher courts' decisions but also by their 'mode of analysis'").  We refer

4   to this concept as "jurisdictional parity," an issue we discuss at length below.

5       ***B.      Jurisdictional Parity***

6       Because there is no binding Supreme Court or Ninth Circuit authority on whether a

7   national bank is a citizen of the state where its principal place of business is located, we

8   must interpret the language of § 1348.[5]  The statute does not define the term "located."

9   As *Schmidt* explained, "'located' is not a word of 'enduring rigidity' . . . but one that

10  gains its precise meaning from context."  546 U.S. at 306.  Accordingly, we begin with a

11  close review and analysis of § 1348's legislative history and judicial interpretations.

12      **1.      The Legislative History and Policies of § 1348**

13      Although § 1348 was enacted in 1948, it had many predecessor versions.   In 1863,

14  national banks automatically had access to federal courts simply because they were

15  national banks.  *Schmidt*, 546 U.S. at 309-10.  State banks and other state incorporated

16  entities, by contrast, could only sue or be sued in federal court based on federal question

17  or diversity jurisdiction.  *Id.*  In 1882, Congress eliminated automatic federal jurisdiction

18  over national banks.  *Id.*  In particular, the 1882 statute provided that federal jurisdiction

19  over national banks "shall be the same as, and not other than, the jurisdiction for suits by

20  or against banks not organized under any law of the United States."  *Id.*  In 1887,

21

22  ───────────────

23      [5] The Eighth Circuit is the only appellate court to have directly addressed the
    issue before us.  *See Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d 702
24  (8th Cir. 2011).  We discuss *WMR* at length below.  In addressing the distinct issue
    of whether a national bank is a citizen of every state where a branch office is
25  located, other circuit courts have stated in dicta that a national bank is a citizen of
    the state of its principal place of business.  *See Firstar Bank, N.A. v. Faul*, 253 F.3d
26  982, 994 (7th Cir. 2001); *Horton v. Bank One, N.A.*, 387 F.3d 426, 431 (5th Cir.
    2004).
27

28

1    Congress removed the "same as" language and first stated that national banks shall "be
2    deemed citizens of the States in which they are respectively located."  *Id.* at 310-11.

3         The 1887 version stated:

4         [A]ll national banking associations established under the laws of the United
          States shall, for the purposes of all actions by or against them, real, personal or
5         mixed, and all suits in equity, be deemed citizens of the States in which they are
          respectively located; and in such cases the circuit and district courts shall not
6         have jurisdiction other than such as they would have in cases between
          individual citizens of the same State.
7
8    *Id.* (emphasis removed).  In 1911, Congress removed the language that "circuit and
9    district courts shall not have jurisdiction other than such as they would have in cases
10   between individual citizens of the same State," but the operative language that national
11   banks are citizens of the states in which they are located remained unchanged.  *See id.*;
12   *Herrmann v. Edwards*, 238 U.S. 107, 113 (1915).  Finally, in 1948 Congress passed    §
13   1348, again retaining the same language regarding the citizenship of a national bank.
14   Section 1348 has remained unchanged since 1948.

15        Before and since 1948, the Supreme Court has read the "located" language in each
16   of the predecessor and current statutes as establishing the Congressional goal of
17   jurisdictional parity between national banks and state banks and corporations.  Beginning
18   in 1887, the Court recognized that the purpose of eliminating automatic federal
19   jurisdiction over national banks was to put them "on the same footing as the banks of the
20   state where they were located for all the purposes of the jurisdiction of the courts of the
21   United States."  *Leather Manufacturers' Bank v. Cooper*, 120 U.S. 778, 780 (1887).  It
22   reaffirmed this view even after Congress replaced the 1882 statute's "same as" language
23   with the 1887 and subsequent statutes' "located" language.  *See Petri v. Commercial Nat.
24   Bank*, 142 U.S. 644, 650 (1892) (explaining that "[n]o reason is perceived why it should
25   be held that congress intended that national banks should not resort to federal tribunals as
26   other corporations and individual citizens might"); *Continental Nat. Bank v. Buford*, 191
27   U.S. 119, 123-24 (1903) ("The necessary effect of [the 1882 and 1887] legislation was to
28

1   make national banks, for purposes of suing and being sued in the circuit courts of the

2   United States, citizens of the states in which they were respectively located, and to

3   withdraw from them the right to invoke the jurisdiction of the circuit courts of the United

4   States simply upon the ground that they were created by, and exercised their powers

5   under, acts of Congress.  No other purpose can be imputed to Congress than to effect that

6   result."); *Federal Intermediate Credit Bank of Columbia v. Mitchell*, 277 U.S. 213, 216

7   (1928) ("[N]ational banks were by the acts of 1882 and 1887 put on the same basis in

8   respect of jurisdiction as if they had not been organized under an act of Congress, and

9   that as to such suits federal incorporation was not a ground for jurisdiction").[6]

10      Although the 1911 statute deleted the language that "circuit and district courts shall

11   not have jurisdiction other than such as they would have in cases between individual

12   citizens of the same State," the Court did not waver in its view that jurisdictional parity

13   had not been disturbed.  *See Herrmann v. Edwards*, 238 U.S. 107, 111-14 (1915)

14   (reaffirming in interpretation of 1911 statute the longstanding principle that "because a

15   corporation was a national bank, created under an act [of] Congress, gave it no greater

16   right to remove a case than if it had been organized under a state law").  Further,

17   *American Surety* also interpreted the 1911 predecessor statute and clearly applied

18   jurisdictional parity when it noted the "close analogy" between corporations and national

19   banks.  *See Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d 702, 716 (8th Cir.

20   2011) (Murphy, J., dissenting) (explaining that in 1948, *American Surety* was the only

21   circuit opinion that considered the meaning of the term "located" in § 1348's predecessor

22   statute).

23      Nor did the Supreme Court deviate from its long-held and consistent view of

24   jurisdictional parity even with the enactment of § 1348 in 1948.  *See Mercantile Nat.*

25   *Bank at Dallas v. Langdeau*, 371 U.S. 555, 565-66 (1963) (distinguishing the "Act of

26   _____

27      [6]Although *Mitchell* was decided in 1928, it did not address the 1911
    predecessor statute.

28

1  1882 *and its successors*," including § 1348, from venue statute by noting that "the 1882

2  Act and the 1887 Act were designed to overcome the effect of [prior statutes,] which

3  allowed national banks to sue and be sued in the federal district and circuit courts solely

4  because they were national banks[, and] apparently sought to limit . . . the access of

5  national banks to . . . the federal courts to the same extent to which non-national banks

6  are so limited") (emphasis added).

7  Given this judicial context, we conclude that Congress intended to continue

8  jurisdictional parity when it enacted § 1348 with the same material language as the 1887

9  and 1911 predecessors. *See Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is

10  presumed to be aware of an administrative or judicial interpretation of a statute and to

11  adopt that interpretation when it re-enacts a statute without change.").  Congress is

12  presumed to have known that courts had consistently held that the purpose of § 1348's

13  predecessors was to create jurisdictional parity.  Congress is also presumed to know that

14  *American Surety* had interpreted the ambiguous term "located" in a predecessor statute by

15  drawing a "close analogy" between corporations and national banks to conclude that they

16  should be treated the same way. *See Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 988 (7th

17  Cir. 2001) ("Congress passed 28 U.S.C. § 1348 against an interpretive background which

18  assumed that national banks were to have the same access to the federal courts as state

19  banks and corporations."); *Horton v. Bank One, N.A.*, 387 F.3d 426, 436 (5th Cir. 2004)

20  ("We construe section 1348 in light of Congress's intent to maintain jurisdictional parity

21  between national banks on the one hand and state banks and corporations on the other.").

22

23  //

24  //

25         **2.     The 1958 Amendment to 28 U.S.C. § 1332(c)(1)**

26         We acknowledge that in 1948, corporations were citizens of only the state of their

27  incorporation, and jurisdictional parity would have been achieved by treating national

28

1   banks as citizens of only one state.  Ten years later, Congress enacted dual citizenship for

2   corporations under § 1332(c)(1).  In light of this change to corporate citizenship in 1958,

3   our task is to determine whether Congress intended the term "located" to enact

4   jurisdictional parity as of 1948, regardless of any subsequent changes in how

5   corporations are treated ("static parity") or whether Congress intended the term to

6   incorporate any changes, such that national banks would remain "on the same footing" as

7   corporations even if the rules for corporations changed ("dynamic parity").

8        Given the extensive judicial background that the purpose of the predecessor

9   statutes was to put national banks on the same footing as state banks and corporations, we

10  conclude that Congress intended to enact dynamic parity.  Moreover, the policy behind

11  jurisdictional parity had not changed by 1948, or even by 1958 for that matter.  Congress

12  established jurisdictional parity because national banks should not have preferential

13  access to the federal courts as compared to corporations and state banks.  There is no

14  reason to conclude that the policy of parity applies less today than it did in 1948 or at any

15  of the many other times when courts have reaffirmed that parity is the point of § 1348's

16  predecessors.  An analysis of the policies of diversity jurisdiction and principal place of

17  business citizenship, as well as the legislative history of § 1332(c), confirms this

18  conclusion.

19       Congress enacted dual citizenship for corporations in 1958.  *Schmidt*, 546 U.S. at

20  306.  Under § 1332(c)(1), a corporation is a citizen of every state "by which it has been

21  incorporated and of the State . . . where it has its principal place of business."  28 U.S.C.

22  § 1332(c)(1).  Prior to 1958, corporations were citizens only of their states of

23  incorporation.  *Schmidt*, 546 U.S. at 306; *see generally Hertz Corp. v. Friend*, 130 S.Ct.

24  1181, 1187-89 (2010) (discussing legislative history of dual citizenship amendment).

25  Although Congress did not amend § 1348 when it created dual citizenship for

26  corporations, we conclude that if Congress intended to abrogate parity in 1958, it would

27  have so stated.

28

1   First, an analysis of the enduring policies of diversity jurisdiction and dual

2   citizenship confirms our conclusion that Congress intended to continue jurisdictional

3   parity in 1958.  "[D]iversity jurisdiction's basic rationale" is providing a federal forum

4   "to those who might otherwise suffer from local prejudice against out-of-state parties."

5   *Hertz Corp.*, 130 S.Ct. at 1188.  Congress thus extended citizenship to corporations in

6   their principal places of business in part because under the prior state of incorporation

7   rule, a corporation could access federal courts "in a State where it conducted nearly all its

8   business," even though such corporation plainly would not suffer outsider bias in that

9   state.  *Id.*  (citing *Black and White Taxicab & Transfer Co. v. Brown and Yellow Taxicab*

10  *& Transfer Co.*, 276 U.S. 518, 522-25 (refusing to question corporation's reincorporation

11  motives and finding diversity jurisdiction)); *see also Co-Efficient Energy Systems v. CSL*

12  *Industries, Inc.*, 812 F.2d 556, 558 (9th Cir. 1987) ("This fiction of stamping a

13  corporation a citizen of the State of its incorporation has given rise to the evil whereby a

14  local institution, engaged in a local business and in many cases locally owned, is enabled

15  to bring its litigation into the Federal courts simply because it has obtained a corporate

16  charter from another state." (quoting § 1332's legislative history)).  This rationale applies

17  equally to a national bank, which will not suffer outsider bias in the state where its

18  principal place of business is located.  The present case demonstrates this point with

19  particular force.  "Wells Fargo is an iconic California institution.  It admittedly maintains

20  its principal place of business in California.  There is little possibility that Wells Fargo

21  will be viewed as an outsider when litigating in California courts."  *Vaughn v. World*

22  *Savings Bank FSB*, Case No. 11-CV-6999-DMG (JEM), Order Remanding Action, at 3

23  (C.D. Cal. March 7, 2012).

24  //

25  Another related policy of dual citizenship is "to prevent frauds and abuses"

26  whereby a corporation deliberately manipulates its place of incorporation to contrive

27  federal jurisdiction.  *Hertz Corp.*, 130 S.Ct. at 1189.  This policy also applies equally to

28

1   national banks because they can establish a main office in a state different from where

2   they have their principal place of business.  Such a possibility opens the door to shopping

3   for a federal forum in a state where a national bank plainly will not face outsider bias,

4   precisely the risk Congress intended to reduce with dual citizenship.

5        Second, that Congress did not make a like change to Section 1348 when it enacted

6   Section 1332(c)(1) is explained by the respective authority governing citizenship of

7   national banks as opposed to state banks or corporations.  The legislative history shows

8   that in 1958, Congress enacted dual citizenship to abrogate the "virtually absolute" rule at

9   that time that corporations were citizens only of their states of incorporation.  *Hertz*

10  *Corp.*, 130 S.Ct. at 1188.[7]  There is and has been no comparable "absolute" rule for

11  national banks.  Rather, the rule for national banks is that they are citizens of the states in

12  which they are "located."  28 U.S.C. § 1348.  But "located" is a "chameleon word" whose

13  "meaning depends on the context in and purpose for which it is used."  *See Schmidt*, 546

14  U.S. at 318.  As other courts have also recognized, "[t]he language of       § 1348 and its

15  predecessor[s] in 1887 and 1911 – 'in which they are respectively located' – is not static

16  (as would be if the statute simply stated, *e.g.*, 'the location of the bank's main office') but

17  elastic enough to incorporate evolving changes in the law."  *Martinez*, 2013 WL

18  2237879, *10.  To effectuate the purpose of the 1958 amendment, Congress had to

19  expressly change the law to abrogate the absolute rule of single citizenship for

20  corporations.  By contrast, Congress did not have to change the elastic term "located" in

21  order to maintain the long-understood policy of jurisdictional parity.

22       Taken together, the legislative histories of § 1348 and § 1332(c)(1) and the policies

23  of diversity jurisdiction and dual citizenship strongly support our conclusion that

24  Congress intended to continue jurisdictional parity between national banks and

25  _____

26       [7] The absolute "state of incorporation" rule was judicially created to define
    the citizenship of corporations for diversity purposes.  *Hertz Corp.*, 130 S.Ct. at
27  1187-89 (discussing history of corporate citizenship).

28

1    corporations.  We do not see why Congress would eliminate diversity jurisdiction for

2    corporations in the states of their principal place of business while preserving it for

3    national banks.  It is highly unlikely that Congress would have intended to abrogate the

4    status quo by establishing jurisdictional *disparity* plainly inconsistent with the judicial

5    background and the policies of diversity jurisdiction.  Had Congress intended such an

6    odd result, it would have so stated; yet it expressed no such intent.  We decline to

7    conclude that, by its silence, Congress intended to abandon not only more than six

8    decades of jurisprudence, but also the very purposes for limiting diversity jurisdiction

9    that animated the 1958 amendment.

10         In light of the foregoing, we conclude that a national bank is also located in the

11   state of its principal place of business.  Wells Fargo therefore is a citizen of California,

12   and complete diversity does not exist in this case.[8]

13

14   ───────────────────────

15       [8] Wells Fargo has argued before other courts that "[t]here is . . . no basis for
concern that national banks will seek to relocate their main offices in order to
16   expand the scope of federal jurisdiction."  *Rouse v. Wachovia Mortgage, FSB*,
Case No. 12-55278, Opening Brief at 36 (9th Cir. 2012).  One argument is that
17   moving a national bank's office raises a "host of complex issues" apart from
jurisdiction, such as the maximum interest rates the bank can charge. (Id.)  But a
18   corporation faces a similar host of issues apart from jurisdiction when it decides to
reincorporate.  *Compare* Cal. Corp. Code § 600(d) (special meetings may be called
19   by shareholders "entitled to cast not less than 10 percent of the votes at the
meeting"); Cal. Corp. Code §§ 301.5, 708, 708.5 (cumulative voting required in
20   director elections unless corporation is a "listed corporation" and opts out of
cumulative voting by amendment to articles or bylaws) *with* Del. Gen. Corp. Law §
21   211(d) (special meetings may be called as "authorized by the certificate of
incorporation or by the bylaws"); Del. Gen. Corp. Law §§ 214 & 216(3) (plurality
22   voting in director elections is default, but the certificate of incorporation may
provide for cumulative voting).  Because non-jurisdictional issues may dissuade
23   both corporations and national banks from changing their citizenship, this is no
basis to treat them differently.  Another argument is that it is difficult for a national
24   bank to move its main office to a different state because it usually can only do so in
the case of an interstate merger, "when a bank can select a main office or branch of
25

26

27

28

1    ***C.      Defendants' Arguments***

2           **1.      *Wachovia Bank v. Schmidt***

3           While recognizing that it does not control our decision on this motion, Wells Fargo

4    makes various arguments based on *Schmidt*.  First, it asserts that the Supreme Court

5    "expressed skepticism" at the use of a national bank's principal place of business as a

6    basis for citizenship.  *See Excelsior Funds, Inc. v. JP Morgan Chase Bank, N.A.*, 470

7    F.Supp.2d 312, 317 (S.D.N.Y. 2006) (concluding that "the fairest reading of footnote

8    nine is that the Supreme Court expressed skepticism over whether the term 'located' in

9    § 1348 included a national bank's 'principal place of business,' in view of the absence of

10   such term in the statute").  Footnote 9 of *Schmidt* reads in full as follows:

11              To achieve complete parity with state banks and other state-incorporated
12              entities, a national banking association would have to be deemed a citizen of
                both the State of its main office and the State of its principal place of business.
13              *See Horton*, 387 F.3d, at 431, and n. 26; *Firstar Bank, N. A.*, 253 F.3d, at
                993–994.  Congress has prescribed that a corporation "shall be deemed to be
14              a citizen of any State by which it has been incorporated *and* of the State where
                it has its principal place of business."  28 U.S.C. § 1332(c)(1) (emphasis
15              added).  The counterpart provision for national banking associations, § 1348,
                however, does not refer to "principal place of business"; it simply deems such
16              associations "citizens of the States in which they are respectively located."  The
                absence of a "principal place of business" reference in § 1348 may be of scant
17              practical significance for, in almost every case, as in this one, the location of a
                national bank's main office and of its principal place of business coincide.

18   546 U.S. at 317 n.9.

19   _____

20   either of the merging banks as a main office."  *Rouse v. Wachovia Mortgage, FSB,*
     Case No.12-55278, Opening Brief at 36 (9th Cir. 2012) (citing 12 U.S.C. §
21   1831u(d)(1)).  We question whether this is a significant impediment inasmuch as
22   interstate mergers are hardly unusual.  Indeed, Wells Fargo effected just such a
     change in its main office by way of such merger.  But, even if it is difficult for a
23   national bank to change its main office, a national bank could still, at its founding,
24   deliberately establish a main office in a state other than its principal place of
     business.  This too is a form of jurisdictional manipulation.  Finally, regardless of
25   whether national banks are less able to manipulate their citizenship, the primary
26   policy of diversity jurisdiction is to prevent outsider bias.  As discussed above, this
     policy clearly supports treating a national bank as a citizen of the state of its
27   principal place of business.

28

1      Footnote 9 is at most non-binding dicta because it concerned an issue not presented

2  to the Court.  *Schmidt* rejected branch office citizenship and held that a national bank is a

3  citizen of the state where its main office is located.  But *Schmidt* did not purport to hold

4  that a national bank's main office is the exclusive basis for its citizenship.  On the

5  contrary, the Court noted the principal place of business issue but declined to express an

6  opinion on it because it was "not presented by the parties or necessary to today's

7  decision."  *Id.* at 315 n.8.  Regardless, we do not think that footnote 9 implicitly casts

8  doubt on jurisdictional parity or principal place of business citizenship for national banks.

9

10     Footnote 9 cited, without any hint of disapproval, two circuit cases rejecting

11  branch office citizenship but stating that a national bank is a citizen of *both* the state of its

12  main office and its principal place of business.  *See Horton*, 387 F.3d at 435-36 (stating

13  "that the definition of 'located' is limited to the national bank's principal place of

14  business and the state listed in its organization certificate and its articles of association");

15  *Firstar*, 253 F.3d at 993-94 (concluding "that for purposes of 28 U.S.C.   § 1348 a

16  national bank is 'located' in, and thus a citizen of, the state of its principal place of

17  business and the state listed in its organization certificate").  Second, the footnote merely

18  discusses what would be required for complete parity and the obvious differences in the

19  language of § 1348 and § 1332.  It concludes by noting that the principal place of

20  business issue may be of scant practical significance.[9]  *See also Martinez*,  2013 WL

21  ─────────────────

22      [9] This case, of course, reveals the immense practical significance for a
23  national bank whose principal place of business does *not* coincide with the state of
    its main office.  As Plaintiffs point out, Wells Fargo apparently has 823 offices in
24  California – over a hundred more than it has in any other state.  *See* ATM and
    Banking Locations, <https://www.wellsfargo.com/locator/> (last accessed July 30,
25  2013).  Hence, treating Wells Fargo as a citizen of California will affect the forum
26  for everything from slip and falls in Wells Fargo's 823 branches to cases such as
    this one, where California homeowners with whom Wells Fargo does business
27  allege wrongdoing.  In addition, treating Wells Fargo as a citizen of California will

28

1  2237879, *5 (noting that in footnote 9, "the Court did not conclude that the difference in

2  language was meant to overturn a decades long policy of jurisdictional parity").

3          Defendants also appear to argue that *Schmidt* does not require "precise" parity.

4  (Opp. at 17).  They point out that *Schmidt* appears to reject the branch office rule in part

5  because of the extent of the jurisdictional disparity it would create (i.e., 16 states of

6  citizenship for the bank but only two for a corporation).  546 U.S. at 317.  As other courts

7  have noted, however, "the analytical thrust behind the Supreme Court's

8  holding . . . was to preserve parity between national banks on the one hand, and local

9  banks and corporations on the other."  *Martinez*, 2013 WL 2237879, *4.  For example,

10 the Court explained that if it endorsed branch office citizenship, "the access of a federally

11 chartered bank to a federal forum would be drastically curtailed in comparison to the

12 access afforded state banks and other state-incorporated entities.  Congress, we are

13 satisfied, created no such anomaly."  546 U.S. at 307.  This reasoning shows that the

14 principle of jurisdictional parity remains the most important analytical tool in

15 //

16 //

17 interpreting the term "located" in § 1348.[10]  *Schmidt* does not stand for the proposition

18

19 also affect the forum for claims an out of state plaintiff asserts in California state

20 court.  *See* 28 U.S.C. § 1441(b)(2) (A diversity case "may not be removed if any of

21 the parties in interest properly joined and served as defendants is a citizen of the

   State in which such action is brought.").  A similarly situated corporation, of

22 course, would be treated as a citizen of California.  These significant practical

23 effects underscore our point that Congress more likely intended courts to apply    §

   1348 to preserve jurisdictional parity, as they had done in the past, to avoid

24 significant disparities between a national bank's and a corporation's access to the

25 federal courts.

26       [10] *Schmidt* also reaffirmed the principle of parity in its discussion of venue:

   "this Court's reading of the venue provision in [*Citizens and Southern Nat. Bank v.*

27 *Bougas*, 434 U.S. 35 (1977)] *effectively aligned* the treatment of national banks for

   venue purposes with the treatment of state banks and corporations. . . .  By

28

1   that § 1348 establishes parity only when an alternative rule would create a disparity in

2   citizenship as large as 16 to 2.  Nor does it stand for the proposition that § 1348

3   establishes imprecise parity.[11]  On the contrary, *Schmidt* reflects the continued vitality of

4   jurisdictional parity in analyzing the term "located" in § 1348.[12]

5           A close reading of *Schmidt* supports our analysis that Congress intended dynamic

6   jurisdictional parity when it enacted § 1348.  First, *Schmidt* itself appears to have applied

7   dynamic parity.  As *Martinez* explains, "*Schmidt* did not base its decision . . . on a

8   comparison with corporate citizenship in 1948; rather, it compared national banks to

9   corporations in the present-tense."  2013 WL 2237879, *9.  For example, *Schmidt* noted

10  that "while corporations ordinarily rank as citizens of at most 2 States, Wachovia, under

11  the Court of Appeals' [branch office] rule, would be a citizen of 16 States."  546 U.S. at

12  317.  If the Court viewed § 1348 as enacting static parity, however, its analysis would

13  have read as follows: "while corporations ordinarily ranked as citizens *of only a single*

14  *state in 1948*, Wachovia, under the Court of Appeals' branch office rule, would be a

15  citizen of 16 states."  *Schmidt*'s analysis thus implicitly rejected static parity and the

16  jurisdictional inequality it would establish between corporations and national banks.

17  ────────────────────

18  contrast, the Court of Appeals' decision in the instant case severely constricts
    national banks' access to diversity jurisdiction as compared to the access available

19  to corporations generally."  546 U.S. at 316-17 (emphasis added).

20          [11] Indeed, "imprecise parity" appears to be a contradiction in terms.  The
    plain meaning of parity is "equality."  Cambridge Dictionaries Online, accessed

21  July 30, 2013,

22  <http://dictionary.cambridge.org/dictionary/american-english/parity?q=parity>.

23          [12] Defendants similarly argue that § 1348 does not call for "precise"
    jurisdictional parity.  (Opp. at 16).  They point out that Congress deleted language

24  expressly establishing parity in the 1882 statute more than a century ago.  They

25  also argue, albeit somewhat opaquely, that the 1911 revisions also demonstrate a
    departure from parity.  As discussed at length above in Section III.B.1, however,

26  the Supreme Court consistently explained that jurisdictional parity was the policy

27  of § 1348's predecessor statutes even after Congress replaced express parity with
    the term "located."

28

1    Moreover, *Schmidt* rejected the branch office rule, which would have given

2  national banks disadvantageously less access to the federal courts as compared to

3  corporations.  As the legislative history of § 1348 and its predecessor statutes show,

4  however, the original purpose of jurisdictional parity was to eliminate the prior rule

5  giving national banks advantageously more (i.e., automatic) access to the federal courts.

6  (*See* Section III.B.1, above (discussing predecessor statutes eliminating national banks'

7  automatic access to federal courts)).  Citizenship based solely on a national bank's main

8  office would again give banks advantageously more access to the federal courts as

9  compared to corporations, at least when a national bank's main office is located in a

10  different state than its principal place of business, as here.

11    Finally, *Schmidt* underscored the need to interpret statutory language in light of the

12  statute's purpose.  While a national bank is located in any county or city where it

13  maintained a branch office for purposes of a now-repealed venue statute, it is not

14  similarly located for purposes of citizenship within the meaning of § 1348.  *Schmidt*, 546

15  U.S. at 315-16 (citing *Citizens and Southern Nat. Bank v. Bougas*, 434 U.S. 35, 44-45

16  (1977)).  In particular, the Court noted that "venue 'is primarily a matter of choosing a

17  convenient forum'" while "[s]ubject matter jurisdiction does not entail an assessment of

18  convenience."  *Id.*  We have employed this form of purposive analysis.  Our conclusion

19  that Congress intended § 1348 to incorporate principal place of business citizenship for

20  national banks is based on the stated purposes of § 1348 and § 1332(c)(1) – jurisdictional

21  parity, protecting against bias toward outsiders, and preventing jurisdictional

22  manipulation.

23  //

24        **2.    *Wells Fargo Bank, N.A. v. WMR e-PIN, LLC***

25     Defendants argue that we should follow *Wells Fargo Bank, N.A. v. WMR e-PIN,*

26  *LLC*, 653 F.3d 702 (8th Cir. 2011), which held that a national bank is not a citizen of the

27  state of its principal place of business under § 1348.  *WMR* concluded that "[h]ad

28

1    Congress wished to retain jurisdictional parity in 1958, it could have unequivocally done

2    so.  It did not, and consequently the concept no longer applies."  653 F.3d at 709.  This

3    analysis might have more force if the concept of jurisdictional parity had not been so

4    ingrained in decades of consistent caselaw from the Supreme Court.  The proper

5    perspective is, if anything, the converse of *WMR*'s reasoning.  Given the settled

6    understanding that jurisdictional parity is a Congressional goal that spanned decades,

7    Congress's total silence on abrogating parity is a strong indication that Congress did not

8    intend to disturb the status quo, especially where there is no intervening change of

9    circumstances or policy that might explain any such marked departure.  *See American*

10   *Surety*, 133 F.2d at 162 (concluding that Congress would have plainly stated any intent to

11   effect noteworthy departure from the general rule).

12          Next, pointing out that Congress did not enact principal place of business

13   citizenship for corporations until 1958, *WMR* explained that "we will not import a

14   jurisdictional concept into § 1348 that was unknown at the time of its adoption."  653

15   F.3d at 709.[13]  First, *WMR* is incorrect that principal place of business was "unknown" as

16   a jurisdictional concept in 1948.  In fact, it had been used in the bankruptcy context since

17   1898.  *See Royal Indem. Co. v. American Bond & Mortg. Co.*, 289 U.S. 165, 167-68

18   (1933) (discussing "principal place of business" as part of the test for a bankruptcy

19   court's "territorial jurisdiction" under the Bankruptcy Act of 1898).[14]   Second, this

20   _____

21          [13] Other cases have made a similar point.  *See, e.g.*, *Mireles v. Wells Fargo*

22   *Bank, N.A.*, 845 F.Supp.2d 1034, 1060 (C.D. Cal. 2012) (reasoning that

     "jurisdictional parity at the time [§ 1348] was passed was achieved by limiting a

23   national bank's citizenship to a single location" and "[t]he concept that a

     corporation was a citizen of the state where it had its principal place of business

24   did not arise until 1958, when 28 U.S.C. § 1332(c)(1) was first enacted") (citing

25   *Excelsior Funds, Inc. v. JP Morgan Chase Bank, N.A.*, 470 F.Supp.2d 312, 319

26   (S.D.N.Y. 2006)).

27          [14] We note that "principal place of business" appears to have been a concept

     of personal jurisdiction rather than subject matter jurisdiction in the Bankruptcy

28

1   argument begs the question.  To conclude that Congress did not intend to import a

2   jurisdictional concept into § 1348 that did not exist for corporations in 1948, one must

3   presume that Congress intended static parity, i.e., putting national banks on the same

4   jurisdictional footing as corporations only as of 1948.  Yet the very issue in dispute is

5   whether Congress intended to enact static or dynamic parity in using the term "located"

6   in § 1348.  Therefore, we decline to adopt *WMR*'s reasoning.

7                         **3.    Wells Fargo's Other Arguments**

8          Defendants argue that the Ninth Circuit would not use a national bank's principal

9   place of business to establish citizenship.  They cite *Lowdermilk v. U.S. Bank*, 479 F.3d

10  994, 997 (9th Cir. 2007), which held that U.S. Bank is a citizen of Ohio "because its main

11  office is located in that state" without considering U.S. Bank's principal place of

12  business.  We disagree.  As *Rouse* correctly noted in rejecting this argument, "[w]hen a

13  potential jurisdictional defect is neither noted nor discussed in a federal decision, the

14  decision does not stand for the proposition that no defect existed.  The Court would risk

15  error if it relied on assumptions that have gone unstated and unexamined."  *Rouse v.*

16  *Wachovia Mortg., FSB*, 2012 WL 174206, *10 (C.D. Cal. 2012) (quoting *Ariz. Christian*

17  *Sch. Tuition Org. v. Winn*, __ U.S. ___, 131 S.Ct. 1436, 1448 (2011)).[15]

18         Defendants argue that a banking statute links the terms "main office" and

19

20  _____

21  Act of 1898 because it referred to "*territorial* jurisdiction."  Today, "principal
    place of business" is a venue concept in bankruptcy.  28 U.S.C. § 1408; Nancy C.

22  Dreher, et al., Bankruptcy Law Manual § 2:35 (2013) ("Bankruptcy Law

23  Manual"); *cf.* Bankruptcy Law Manual § 2:2 (discussing exclusive federal subject
    matter jurisdiction over bankruptcy cases).

24         [15] Defendants similarly argue that the Ninth Circuit "implicitly affirmed
    Wells Fargo's exclusive citizenship in South Dakota" in *Bates v. MERS*, 694 F.3d

25  1076 (9th Cir. 2012).  (Opp. at 19-20).  *Bates* did not consider whether Wells

26  Fargo's principal place of business could give rise to citizenship in California.
    Accordingly, we reject this argument for the same reason we reject Defendants'

27  *Lowdermilk* argument.

28

1   "located," and we should therefore hold that a national bank is exclusively a citizen of the

2   state where its main office is located.  *See Valenzuela v. Wells Fargo*, Case No. EDCV

3   12-02149-VAP (DTBx), 2013 U.S. Dist. LEXIS 6608, *4-5 (C.D. Cal. January 15, 2013)

4   (holding that "a national bank is a citizen of the state in which its main office is located,

5   and only that state" based on a banking statute).  In particular, Defendants point to 12

6   U.S.C. § 36(g)(3)(B) in the National Banking Act which provides that "[t]he term 'home

7   State' means the State in which the main office of a national bank is located."  12 U.S.C.

8   § 36(g)(3)(B).  Hence, Defendants contend, the term "located" in     § 1348 refers

9   exclusively to a national bank's main office.  (*See* Opp. at 18).  We disagree.

10       First, § 36(g)(3)(B) defines the term "home state," not the term "located."  This

11   section also does not purport to define a national bank's citizenship for diversity

12   purposes.  Second, even if § 36(g)(3)(B) purported to define the term "located," *Schmidt*

13   expressly held what the term "located" means in one statutory context, e.g., venue, does

14   not necessarily control what it means in another statutory context, e.g., subject matter

15   jurisdiction. 546 U.S. at 315-16.  Rather, as we have done above, we must analyze the

16   distinct context and purposes of the term in each statute.  *See id.*; *see also Martinez*, 2013

17   WL 2237879, *6 (explaining that "§ 1348 is found in the Judicial Code and Judiciary

18   Act, not the National Bank Act; there is no compelling basis for using the National Bank

19   Act as an interpretive tool in analyzing § 1348").  Accordingly, the fact that "located"

20   may mean "main office" under the National Banking Act does not help us determine what

21   "located" means in § 1348, a jurisdictional statute with completely different legislative

22   and judicial histories and purposes.

23       Defendants also briefly argue that the Supreme Court has "historically left [the]

24   application of the [principal place of business] test" to Congress.  (Opp. at 19).  They cite

25   two cases, *Carden v. Arkoma Associates*, 494 U.S. 185 (1990) (holding that a limited

26   partnership is a citizen of every state of which a partner is a citizen) and *Johnson v.*

27   *Columbia Properties Anchorage, LP*, 437 F.3d 894 (9th Cir. 2006) (holding that an LLC

28

1   is a citizen of every state of which its owners and members are citizens).  Citing *Carden*,

2   *Johnson* noted "the Supreme Court's consistent refusal to extend the corporate

3   citizenship rule to non-corporate entities, including those that share some of the

4   characteristics of corporations."  437 F.3d at 899.

5        We do not see how this principle is relevant here.  No statute defines the

6   citizenship of limited partnerships and LLCs.  *See Johnson,* 437 F.3d at 899 (explaining

7   that "like a partnership, an LLC is a citizen of every state of which its owners/members

8   are citizens").  By contrast, § 1348 defines the citizenship of national banks.

9   Accordingly, our task is to interpret § 1348, which we have done above.  In doing so, we

10  have analyzed the extensive legislative and judicial history of jurisdictional parity

11  between national banks, on the one hand, and corporations and state banks, on the other.

12  No similar principle of jurisdictional parity appears to exist for partnerships and LLCs.

13  *Carden* and *Johnson* are thus inapposite.

14       Finally, Wells Fargo has argued before other courts, though not here, that the

15  jurisdictional statute for federal savings associations, 12 U.S.C. § 1464(x), indicates

16  Congress's intent that a national bank should have single citizenship according to the

17  location of its main office.  After the Supreme Court handed down *Schmidt*, Congress

18  enacted 12 U.S.C. § 1464(x) in 2006, which states as follows: "In determining whether a

19  Federal court has diversity jurisdiction over a case in which a Federal savings association

20  is a party, the Federal savings association shall be considered to be a citizen only of the

21  State in which such savings association has its home office."  *See* Pub. Law 109–351,

22  2006 S 2856.

23       We do not find persuasive the argument that § 1464(x) controls the outcome for

24  national banks under § 1348.  First, § 1464(x) does not use the term "located" and does

25  not link that term to sole main office citizenship.  Furthermore, Congress is presumed to

26  know that *Schmidt* left open the question of principal place of business citizenship for

27  national banks.  In response to *Schmidt*, Congress could have expressly linked a national

28

23

1    bank's citizenship to a federal savings association's, but it did not.  Second, as discussed

2    at length above, national banks have long been compared to corporations and state banks

3    to determine the meaning of the term "located" in § 1348.  There is no similar judicial

4    background comparing national banks to federal savings associations.  Nor is there any

5    judicial recognition of jurisdictional parity between federal savings associations, on the

6    one hand, and corporations and state banks, on the other.  Accordingly, § 1464(x) does

7    not affect our analysis of Wells Fargo's citizenship under § 1348.

8    **IV.   Conclusion**

9            In light of the foregoing, we conclude that for purposes of § 1348 a national bank

10   is also located in the state of its principal place of business.  Wells Fargo therefore is a

11   citizen of California, and complete diversity does not exist in this case.  Accordingly,

12   Plaintiff's Motion to Remand is **GRANTED**.  As we lack subject matter jurisdiction, we

13   decline to rule on the pending Motion to Dismiss.  This action is remanded to the state

14   court from which it was removed.  The Clerk shall effect such remand forthwith.

15

16           **IT IS SO ORDERED**.

17           DATED: August, 1 2013

18                                                        _____

19                                                        GEORGE H. KING
                                                          Chief United States District Judge

20

21

22

23

24

25

26

27

28